Opinion issued March 31, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00705-CV

———————————

NETCO, Inc., Appellant

V.

Diana
Montemayor and Ludivina flores, Appellees



 



 

On Appeal from the 11th District Court 

Harris County, Texas



Trial Court Case No. 2006-36666

 



 

O P I N I O N

In this escrow account dispute, NETCO Inc. (NETCO) appeals
from a judgment against it and in favor of Diana Montemayor and Ludivina
Flores.  Montemayor and Flores sued NETCO
for breach of fiduciary duty, arising from NETCO’s failure to pay money it held
in escrow to a valid lien holder upon NETCO’s closing of a real estate
transaction.  NETCO asserted a
limitations defense, which the trial court submitted to a jury.  Following the jury’s finding against the
merit of that defense, the parties submitted the breach of fiduciary duty claim
to the bench.  The trial court found
against NETCO and awarded damages.  On
appeal, NETCO urges that it should have judgment notwithstanding the jury’s
verdict because the plaintiff’s counsel lacked reasonable diligence in effecting
service of process.  In addition, it
challenges the trial court’s bench trial finding of liability and its award of
mental anguish damages.  

We hold that the evidence supports the jury’s finding that
the plaintiffs exercised reasonable diligence in obtaining service of process,
and thus the trial court did not err in denying NETCO’s request for a jnov on
its limitations defense.  We further hold
that sufficient evidence supports the trial court’s liability findings, but
that the award of mental anguish damages is not supported as a matter of law,
under the standard for mental anguish damages set forth in Parkway v. Woodruff.[1]  We therefore reverse that award.  We affirm the judgment in all other respects.   

BACKGROUND

In June 2002,
Montemayor entered into a contract for deed with Matthew Logan for the purchase
of real property located at 8712 Kimwood in Houston, Texas.  After a year of making payments, she decided
that she and her cousin, Flores, would purchase the property through a mortgage
and deed of trust.  Sterling Bank had a
lien on the Kimwood property to secure a loan that it had made to Logan.

          NETCO
conducted the real estate closing for the transaction on December 10, 2003,
acting as both title company and escrow agent for the transaction.  As part of the closing, NETCO prepared a title
commitment and a HUD-1 settlement statement. 
Montemayor and Flores purchased a title policy on behalf of their lender
to insure that, upon closing, clear title to the property would transfer.  In the commitment, NETCO acknowledged the
Sterling Bank lien.  But in the
settlement statement it did not list Sterling Bank as a lienholder entitled to
funds at closing. The “Reduction in Amount Due to Seller—Payoff of first
mortgage loan” line item, typically used to indicate a payoff to the seller’s
lender, was left blank.  Thus, the
proceeds that should have been directed to Sterling Bank, as a lien holder,
were instead paid to Logan, the seller. 
Montemayor, Flores, and NETCO signed the HUD-1 settlement statement. 

          Montemayor
and Flores also executed a document identified as NETCO’s Escrow Trust
Disbursement Instructions.  This document
stated that Montemayor and Flores authorized and directed NETCO to make
disbursements for the purchase of the property.    

NETCO’s escrow
agent issued a check for $88,703.35 to Logan. 
It did not pay Sterling Bank any funds to resolve the bank’s existing
lien, to which Logan’s title was subordinated, nor did it secure a release of
Sterling Bank’s lien on the property.  At
closing, Montemayor and Flores paid NETCO $574 for title insurance services and
$250 for escrow services.

In 2005,
Montemayor and Flores attempted to sell the Kimwood property to Martha
Morales.  They testified that it was at
that time that they discovered that Sterling Bank had a lien on the
property.  Montemayor and Flores thus lacked
marketable title to the property, and could not complete the sale.  Montemayor and Flores subsequently abandoned
the property, and it was foreclosed.  Montemayor
and Flores purchased another home prior to the Kimwood foreclosure.  At the time the Kimwood property was
foreclosed upon, the Sterling Bank lien was still outstanding.  

On April 18,
2007, Montemayor and Flores sued NETCO.  They
also asserted a claim against Logan, which he settled for $35,000.  After the trial court denied NETCO’s motion
for summary judgment on limitations, it bifurcated the case, and tried the
limitations defense to a jury.  The jury
returned findings that favored Montemayor and Flores.  The trial court then held a bench trial on the
remaining issues in the case. It awarded Montemayor and Flores $41,135.20 in
economic damages and $50,000 for mental anguish.  After applying an offset of $35,000 to credit
the settlement from Logan, the trial court rendered judgment for $56,135.20.

STATUTE OF LIMITATIONS

NETCO
contends that the trial court erred in denying its motion for jnov after the
jury found that Montemayor’s and Flores’s breach of fiduciary duty claims were
not barred by the statute of limitations. 
Both parties agree that the applicable statute of limitation for a
breach of fiduciary duty claim is four years. 
Tex. Civ. Prac. & Rem. Code
Ann. § 16.004 (West 2002).  The
jury found that (1) Montemayor and Flores should have discovered that the
proceeds of the closing were paid to Matt Logan, not Sterling Bank, by May 30,
2005; and (2) that Montemayor and Flores had exercised due diligence in
serving NETCO with this lawsuit.  The
jury’s second finding is necessary if we determine that the service date was
outside the limitations period, and the jury’s accrual date is incorrect as a
matter of law.

Montemayor
and Flores maintain that the jury’s finding that the limitations period did not
begin to run until they attempted to sell the property and “discovered” the
Sterling Bank lien on May 30, 2005, is legally correct.  NETCO responds that the discovery rule is not
applicable here, and that the limitations period began to run on December 10,
2003—the date of the real estate closing. 
NETCO further asserts that because it was not served with process within
four years of that date, the breach of fiduciary duty claims against it are
time barred as a matter of law.  We agree
with NETCO’s legal contention about the accrual date, but we uphold the jury’s
second finding about diligence in service. 
We agree with the trial court that NETCO failed to establish its
limitations defense as a matter of law because some evidence supports the
jury’s conclusion that the plaintiffs exercised reasonable diligence in
securing service.

A.  
Standard
of Review

Rulings on motions for jnov are reviewed under the same
legal-sufficiency test as are appellate no-evidence challenges if made on an
evidentiary basis.  See Tanner v.
Nationwide Mut. Fire Ins. Co.,
289 S.W.3d 828, 830 (Tex. 2009) (citing City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005)).  When such a ruling is based on a question of
law, we review that aspect of the ruling de novo.  In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994) (“[Q]uestions of law are
always subject to de novo review.”); John Masek Corp. v. Davis, 848 S.W.2d 170, 173 (Tex. App.—Houston
[1st Dist.] 1992, writ denied) (providing that jnov is proper when legal
principle precludes recovery); see also Morrell v. Finke, M.D., 184 S.W.3d 257, 290–91 (Tex.
App.—Fort Worth 2005, pet. denied) (concluding that trial court erred by
denying defendants’ motion for jnov because plaintiff’s claims against them
were barred by statute of limitations). 
A jnov is proper when a directed verdict would have been proper.  See Tex.
R. Civ. P. 301; Fort Bend Cnty. Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991); CDB
Software, Inc.v. Krell, 992
S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  A motion for jnov should be granted when the
evidence is conclusive and one party is entitled to recover as a matter of law
or when a legal principle precludes recovery.  Phar-Mor,
Inc. v. Chavira, 853 S.W.2d 710, 713 (Tex. App.—Houston [1st Dist.] 1993,
writ denied) (citing Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990)).

B.  
Accrual
Date

The discovery rule defers the accrual of a cause of
action until the plaintiff knows, or by exercising reasonable diligence, should
know of the facts giving rise to the claim.  Barker v. Eckman, 213 S.W.3d 306, 311–12 (Tex. 2006).  For the discovery rule to apply, the injury must be
inherently undiscoverable and objectively verifiable.  Id. at 312; Via Net v. TIG Ins. Co., 211 S.W.3d 310, 313 (Tex.
2006).  When analyzing the applicability of the
discovery rule in cases
in which the alleged injuries arise from a breach of fiduciary duty, the claims are generally
considered inherently undiscoverable.  S.V.
v. R.V., 933 S.W.2d 1, 8
(Tex. 1996); Computer Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex. 1996).
Nonetheless, once the fiduciary’s misconduct becomes apparent, the claimant
cannot ignore it, regardless of the fiduciary nature of the relationship. S.V.,
933 S.W.2d at 8; Computer Assocs., 918 S.W.2d at 456. In other words,
such claims accrue when the claimant knows or in the exercise of ordinary
diligence should know of the wrongful act and resulting injury.  Murphy v.
Campbell, 964 S.W.2d 265, 271
(Tex. 1997). The date that a claimant knew or should have known of an injury is
generally a fact question. Childs v. Haussecker, 974 S.W.2d 31, 44 (Tex. 1998). 
However, if reasonable minds could not differ about the conclusion to be
drawn from the facts in the record, the start of the limitations period may be
determined as a matter of law.  Id.

          Based on the evidence presented
at the jury trial, NETCO established as a matter of law that Montemayor and
Flores knew or should have known about their injury at the date of the
closing—December 10, 2003.  The closing
documents showed the existence of the Sterling Bank lien on schedule C of the
title commitment.  The owner’s affidavit
that Montemayor and Flores executed contained this commitment.  In contrast, the HUD-1 settlement statement
authorized the disbursement of funds to Logan, the Harris
County tax commissioner, and the local school system, but did not authorize a
disbursement to Sterling Bank.  The
settlement statement contained a section entitled “Reduction in Amount Due to
Seller.”  A line in that section, which
indicates whether there has been a payoff of first mortgage loan, was left
blank, thereby indicating that Sterling Bank had not been paid.  Montemayor and Flores signed the settlement
statement as well.

          Thus, the record shows that at
closing, Montemayor and Flores signed documents (1) indicating the
existence of a lien by Sterling Bank, but (2) recognizing that NETCO
proposed to disburse funds to parties that did not included Sterling Bank.  They are presumed to know the content and
effect of the documents they signed.  See First City Mortg. Co. v. Gillis, 694 S.W.2d 144, 147 (Tex. App—Houston
[14th Dist.] 1985, writ ref’d n.r.e.) (“If no fraud is involved, one who signs an
agreement without knowledge
of its contents is presumed to have consented to its terms and is charged with knowledge of
the agreement’s legal effect.”).  In
addition, a properly recorded lien provides notice to all persons of its
existence.  HECI Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998).  The Sterling Bank lien was a properly recorded
lien.  Accordingly, we hold that the
statute of limitations began to run on the closing date, December 10, 2003, as
a matter of law.  

C.  
  Diligence in Service

Montemayor
and Flores sued NETCO on April 18, 2007, within the four-year limitations
period that began to run on December 10, 2003. 
However, they did not achieve service on NETCO until April 15, 2008,
four months after limitations had expired.

If a plaintiff files
its petition within the limitations period, service outside the limitations
period may still be valid if the plaintiff exercises diligence in procuring
service on the defendant.  Ashley v. Hawkins, 293 S.W.3d 175, 179
(Tex. 2009); Gant v. DeLeon, 786
S.W.2d 259, 260 (Tex. 1990) (per curiam) (citing Zale Corp v. Rosenbaum, 520 S.W.2d 889, 890 (Tex. 1975) (per curiam)).  Once a defendant has affirmatively pleaded
the defense of limitations and shown that service was untimely, the burden
shifts to the plaintiff to prove diligence in her efforts to effectuate
service.  Ashley, 293 S.W.3d at 179; Proulx
v. Wells, 235 S.W.3d 213, 216 (Tex. 2007) (per curiam).  Diligence is determined by asking “whether
the plaintiff acted as an ordinarily prudent person would have acted under the
same or similar circumstances and was diligent up until the time the defendant
was served.”  Ashley, 293 S.W.3d at 179 (quoting Proulx, 235 S.W.3d at 216). 
Although ordinarily a fact question, a plaintiff’s evidence may
demonstrate a lack of diligence as a matter of law “when one or more lapses
between service efforts are unexplained or patently unreasonable.”  Id. (quoting
Proulx, 235 S.W.3d at 216).  The plaintiff has the burden to explain every
lapse in effort or period of delay.  Proulx, 235 S.W.3d at 216 (citing Gant, 786 S.W.2d at 260). 

Here, the jury found
that Montemayor and Flores exercised diligence in serving NETCO.  The following timeline is relevant to their
attempts to serve NETCO:

April 18, 2007     NETCO
is sued.  Plaintiffs request service
through the secretary                         of state on NETCO’s registered agent
for service of process in        

                             Texas.

 

May
15, 2007       First attempt to serve
NETCO at the address provided by the secretary of state as the address for
NETCO’s registered agent.  The attempted
service is by certified mail return receipt requested; it is returned for an
insufficient address.

 

May
24, 2007       Second attempt to serve
NETCO at the address on file with the secretary of state by certified mail
return receipt requested.  The letter is
returned “undeliverable as addressed.”

 

June
18, 2007       Third attempt to serve
NETCO at the same address by certified mail return receipt requested.  The letter is returned “undeliverable as
addressed.”

 

June
19, 2007       Fourth attempt to serve
NETCO at the same address by certified mail return receipt requested.  The letter is returned for an insufficient
address.

 

December
3, 2007          Limitations expires.

 

January
2, 2008   In response to inquiries, the
Texas Department of Insurance informs counsel that NETCO is not an insurance
company and that if they desire for the department to effectuate service on
NETCO, they must provide the authority for their request.

 

January
7, 2008   Plaintiffs request that the
Texas Department of Insurance serve NETCO. 
The Department of Insurance notifies counsel that it does not require
title insurance companies to register with the department.

 

February
13, 2008         NETCO files an amended
statement of registered agent for service of process with the secretary of
state, naming a different agent in Houston, Texas.

 

March
31, 2008    Plaintiffs’ counsel hires a
professional process server, who attempts to effectuate personal service on
NETCO at the physical location of the registered agent in Carrolton,
Texas.  After physically viewing the
premises, the process server informs plaintiff’s counsel that NETCO’s agent is
no longer at the address that NETCO had on file with the secretary of state.

 

April
1, 2008       Plaintiffs’ professional
process server attempts personal service on NETCO’s president in Buffalo Grove,
Illinois.  The attempted service is not
successful.

 

April
15, 2008     Plaintiffs serve NETCO via
substituted service on the secretary of state, which agreed to forward service
to the president of the company after multiple attempts at service on the
registered agent had failed.

 

          NETCO
argues that, as a matter of law, these service attempts show a lack of
diligence.  Like the trial judge and the
jury in this case, we disagree.  The plaintiffs filed suit against NETCO
within the limitations period.  They obtained service within four months
of the expiration of limitations.  Most relevant to the consideration of diligence here is
NETCO’s failure to maintain a correct address for its agent for service of
process with the secretary of state, as required by law for companies that do
business in Texas.  

Service of process on corporations is governed by the Texas
Business Organizations Code.  The Code
places a duty upon corporations to maintain a registered agent and office, and
to notify the secretary of state of any change to either.  See Tex. Bus. Orgs. Code Ann. §§ 5.201, 5.202 (West 2010).  The Code provides that the secretary of state
becomes the agent for service of process of a corporation whenever a
corporation fails to maintain a registered agent in Texas, or whenever its
registered agent cannot be found with reasonable diligence at the registered
office.  See Tex. Bus. Orgs. Code Ann.
§ 5.251 (West 2010). 

Here, the jury could reasonably have concluded that,
although multiple attempts to serve process via NETCO’s registered agent
failed, the blame lay with NETCO, not plaintiffs’ counsel.  See  G.F.S. Ventures, Inc. v. Harris, 934
S.W.2d 815, 818 (Tex. App.—Houston [1st Dist.] 1996, no writ) (upholding default judgment where
record demonstrated service via the secretary of state on company’s registered
agent, and company failed to notify secretary of state of registered agent’s change
of address); Ingram Indus. Inc. v. U.S.
Bolt Mfg., Inc., 121 S.W.3d 31, 34 (Tex. App.—Houston [1st Dist. 2003, no
pet.) (holding that copy of original citation returned unexecuted with the
notation “bad address” sufficient to show registered agent could not be found
with reasonable diligence, and upholding default judgment against
corporation).  It is undisputed that
plaintiffs’ counsel served NETCO at the address it had provided for its
registered agent on four occasions. 
Plaintiffs’ counsel testified that the secretary of state’s office
requested a showing that multiple efforts at service on the registered agent
had failed before it would agree to forward service of process on the president
of the company.  This testimony was not
controverted.

NETCO points to a five
and a half month period of inaction before the expiration of limitations, and
urges that the jury could not find diligence in the face of this delay.  When several service efforts at the address provided by the
secretary of state failed, plaintiffs’ counsel confirmed the address with the
secretary of state’s office.  That office
verified that the address that plaintiffs’ counsel used was correct.  Counsel attempted to locate NETCO’s agent of
service of process through the Department of Insurance, but was told that title
insurance companies do not register agents through that agency.  Counsel then attempted alternative means of
service through NETCO’s physical address and through NETCO’s president.  Counsel’s private process server personally
confirmed that NETCO had no registered agent at the physical address that it
had provided to the secretary of state.  Plaintiff
sought substituted service in the trial court, and achieved service within four
months of the expiration of limitations.  Plaintiffs’ counsel offered a
sufficient explanation for the delay:  NETCO’s
failure to update its registered agent for service of process hampered
service.  Cf.
Ashley, 293 S.W.3d at 179 (noting that plaintiff made no
explanation for lapse in service attempts).  Her trial testimony regarding her efforts to achieve service
supports the jury’s verdict. See Proulx, 235 S.W.3d at 217 (noting that
defendant’s efforts to avoid service is circumstance to consider in determining
plaintiff’s diligence); G.F.S. Ventures, 934
S.W.2d at 816 (noting that, under Texas law, secretary of state becomes agent
for service of process on corporation whenever corporation fails to maintain
registered agent in Texas, or whenever its registered agent cannot be found
with reasonable diligence at registered office.); see also Tex. Bus. Orgs.
Code Ann. § 5.251 (West 2010).     

We hold that the evidence supports the jury’s conclusion
that the plaintiff exercised diligence, and thus the trial court did not err in
submitting the issue to the jury or in denying NETCO’s motion for jnov.  

D.  
 Admission of Evidence

Lastly, NETCO contends that the jury’s findings on diligence
should be reversed because the trial court admitted a letter from Dan Kuhn, an
employee in NETCO’s legal department to the Texas Department of Insurance.  In the letter, he states: 

As I understand the complaint, [Montemayor and Flores]
allege that NETCO incorrectly disbursed funds in their settlement and did not
pay off the contract seller’s lien. 

 

I have reviewed the file and discussed with file with [other
NETCO personnel] and the complaint appears accurate . . . . Inadvertently at
the settlement of the transaction the funds necessary to satisfy the Sterling
Bank lien were instead disbursed directly to Matt Logan and not to Sterling
Bank.  

 

When this error was discovered well after settlement, I immediately made contact with Matt Logan
and was told by Mr. Logan that he would contact Sterling Bank and take care of
procuring a release of lien.  

 

Whether to include or exclude evidence is a matter committed
to a trial court’s discretion, requiring reversal only if any error probably caused
it to render an improper judgment.  Nissan Motor Co. v. Armstrong, 145
S.W.3d 131, 144 (Tex. 2004).  NETCO
contends that the trial court abused its discretion in admitting the letter
because it came after the date by which all had learned that the Sterling Bank
lien still existed.  It further contends
that a reference to NETCO’s error had the potential of unfairly prejudicing the
jury against its limitations defense. 
The letter, however, was responsive to the suggestion that NETCO had introduced
through witnesses that it had not made any error during the closing because it
had disbursed the settlement amounts in accord with the HUD-1 settlement
statement, and Montemayor and Flores were fully informed that Sterling Bank
would not be paid.  Both parties introduced
concepts of liability into evidence.  We
hold that the trial court acted within its discretion when it admitted the
letter.  The letter demonstrated that the
Sterling Bank lien had not been released, and that NETCO itself did not
discover the error until “well after settlement.”  Although we have held that the discovery rule
does not apply to the accrual date in this case, the accrual date was an issue
that the trial court asked the jury to decide, and thus the letter had some
relevance.  NETCO did not seek a limiting
instruction, or ask that the letter be redacted, to ameliorate any concern that
the jury would use the letter for an inadmissible purpose.  See Tex. R. Evid. 105(a).

BREACH OF FIDUCIARY DUTY

A.  
 Liability

Turning to the merits,
NETCO complains that the trial court’s finding that NETCO breached its
fiduciary duty is legally insufficient because NETCO complied with its
obligations as an escrow agent as a matter of law.  NETCO contends that it disbursed the escrow
funds “as instructed,” and that “it cannot violate a fiduciary duty by doing
exactly that which [Montemayor and Flores] instructed [it] to do.”  It further contends that Montemayor and
Flores’ proof of breach fails for lack of expert testimony to support it.   

NETCO prepared the
settlement statement and also prepared the title commitment.  The latter reflected the lien held by
Sterling Bank, but the former did not.  NETCO was charged with the
knowledge of the lien in the title commitment that it prepared.  NETCO did not pay the lien holder as listed
in its title commitment, and it did not secure a release of the Sterling Bank
lien.  NETCO stipulated at trial that part of its obligation was to secure
such a release:

THE COURT:  It is undisputed that when [Montemayor and
Flores] refinanced with New Century that Sterling, which was Logan’s mortgage
company, the first lien that they have on the property did not get paid off?

 

COUNSEL
FOR NETCO:  That is correct.

 

THE COURT:  NETCO admits they should have done it.  It was a mistake.  It didn’t get paid.

 

COUNSEL FOR
NETCO:  We admit we should have gotten a
release from Sterling Bank.

 

Kuhn, a senior examiner for NETCO, also
admitted that NETCO had erred.  In
addition, Logan testified at trial that he called NETCO shortly after receiving
the closing proceeds and inquired whether NETCO had obtained a release from
Sterling Bank.  A NETCO representative
responded that it must have been done since Logan had received the check.

A title insurer who
acts as an escrow agent has a duty to exercise a “high degree of care to
conserve the money and pay it only to those persons entitled to receive it.”  City of
Fort Worth v. Pippen, 439 S.W.2d 660,
665 (Tex. 1969).  In Pippen, the city sued Rattikin, its title insurer, after
discovering that Rattikin’s vice-president had paid a city land agent part of
the funds that the city had escrowed to pay the seller.  Id. at
662–63.  Rattikin argued that it was not
liable because it was the city’s own agent who benefitted from the diversion of
funds, and the city received title to the properties in question.  Id. at
665.  The Texas Supreme Court rejected
this defense, and held that Rattikin was liable for breach of its duty
“regardless of the fact that the [c]ity received exactly what it intended to
buy.”  Id.  Similarly, NETCO argues
that Montemayor and Flores signed the settlement statement that indicated that
NETCO had not deducted the lien amount from the payment to Logan, and thus
responsibility for the problem falls to them. 
But as the jury did in Pippen,
the trial court in this case reasonably could have concluded that Montemayor
and Flores’s failure to catch NETCO’s error on the settlement statement does
not excuse NETCO from liability as title insurer and escrow agent—it prepared
both the settlement statement and the title commitment and “was paid a fee for
its services and for the careful handling of these funds.”  See
id.  NETCO did not secure the release
of the Sterling Bank lien; its obligation to do so was among the purposes for
which it was hired in the first place. 
Its failure to secure the release of lien is some evidence of a breach
of its duties.  See Chilton v. Pioneer Nat’l Title Ins. Co., 554 S.W.2d 246, 248
(Tex. Civ. App.—Waco 1977, writ ref’d n.r.e.) (holding that title insurer’s
failure to cash two escrow checks and deposit them, as done in normal course,
was some evidence of breach of fiduciary duty). 
NETCO does not otherwise challenge the breach, except to say that expert
testimony was required.  It cites no authority for this contention, but
its own admission regarding its error precludes reversal on this basis.  Kuhn agreed that the escrow fee paid to NETCO
“obligated NETCO in the ordinary course of business to have paid off or gotten
a release of the Sterling Bank lien.”  We
hold that sufficient evidence supports the trial court’s finding that NETCO
breached its duties as title insurer and escrow agent.

B.  
 Mental Anguish Damages

In Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex.
1995), the Texas Supreme Court set out the requirements for proof of recovery
for mental anguish damages.  Mental
anguish is the pain resulting from grief, severe disappointment, indignation,
wounded pride, shame, despair or public humiliation.  See id.
at 444 (quoting Trevino v. Sw. Bell Tel.
Co., 582 S.W.2d 582, 584 (Tex. Civ. App.—Corpus Christi 1979, no writ)).  A trial court cannot award mental anguish
damages without either “‘direct evidence of the nature, duration, or severity
of [plaintiffs’] anguish, thus establishing a substantial disruption in the
plaintiffs daily routine’, or other evidence of 
‘a high degree of mental pain and distress’ that is ‘more than mere
worry, anxiety, vexation, embarrassment, or anger.’” Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614
(Tex. 1996) (quoting Parkway, 901
S.W.2d at 444).    

In this record, there
is some evidence of damage to the plaintiffs’ credit reputation, and expenses
that the plaintiffs incurred to improve and maintain the house.  These are economic losses, and were subsumed
within the trial court’s actual damages finding.  The evidence to support an award of mental
anguish is  Montemayor’s testimony.  Flores did not testify.  Montemayor testified that the NETCO’s error
made her feel:  “basically pretty
furious,” “pretty devastated and furious to say the least,” and “extremely
furious.”  This is the complete record on the matter of mental anguish.

But to recover damages
for mental anguish in a case in which the loss is purely economic, one must
prove severe and enduring grief.  See id.; see also Parkway, 901 S.W.2d at 444.  In Parkway,
the Texas Supreme Court held that the worry and anger that the plaintiffs had
due to the flooding of their home did not entitle them to mental anguish
damages.  See Parkway, 901 S.W.2d
at 444.  Similarly, in Saenz, the plaintiffs’ worry about losing their house due to a loss
of income did not rise to a compensable level of mental anguish.  Saenz,
925 S.W.2d at 614.  We hold that the
trial court erred in awarding mental anguish damages because the evidence in
the record does not approach the “high degree of mental pain and distress,”
long in duration and severe, that is necessary to support such an award.  See id.; Parkway 901 S.W.2d at 444.  We therefore reverse the award of those
damages.  

CONCLUSION

We hold that legally sufficient
evidence supports the jury’s finding that the plaintiffs exercised diligence in
obtaining service of process and the trial court’s finding that NETCO is liable
for breach of fiduciary duty.[2]  But the finding of mental anguish damages, sustained
in connection with the economic loss, is not supported by legally sufficient
evidence.  We therefore reverse
that award.  We affirm the judgment in all
other respects.   

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel consists of Chief Justice Radack and Justices
Bland and Massengale.

 











[1]
901 S.W.2d 434, 444 (Tex. 1995).





[2]           NETCO also challenges a breach of
contract finding by the trial court as lacking  
            sufficient pleadings to
support it.  But the trial court rendered judgment on the            breach of fiduciary duty claim, and
not on a contract claim.  Because we
uphold           the breach of fiduciary
duty claim and the trial court did not render a judgment on           breach of contract, we need not
address NETCO’s request that we disregard the       trial
court’s contract finding.